Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
Nelson A. Campbell (SBN 357579)
ncampbell@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDAN RODRIGUEZ, an individual; ADAM GOKCEBAY, an individual; AUDREY ARMACOST, an individual; and MICHAEL CAMPANELLI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>HYBE CO., LTD.; HYBE MUSIC SERVICES, LLC; HYBE AMERICA INC.; ADOR CO., LTD.; KIN MIN-JI p/k/a "MINJI," an individual; HANNI PHAM p/k/a "HANNI," an individual; DANIELLE JUNE MARSH p/k/a "DANIELLE," an individual; KANG HAE-RIN p/k/a "HAERIN," an individual; LEE HYE-IN p/k/a "HYEIN," and individual; UMG RECORDINGS, INC.; YG PLUS CO.; THE COCA-COLA COMPANY, doing business as "COKE STUDIO";  BEASTS AND NATIVES CO. LTD d/b/a "BANA ENTERTAINMENT"; OSCAR SCHELLER, an individual; ELVIRA ANDERFJARD p/k/a | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **DIRECT COPYRIGHT INFRINGEMENT**<br>2. **VICARIOUS COPYRIGHT INFRINGEMENT**<br>3. **ACCOUNTING**<br><br><u>**JURY TRIAL DEMANDED**</u> |

"ELVIRA," an individual; STELLA ROSE BENNETT p/k/a "BENEE," an individual; HO HYUNG LEE p/k/a "250," an individual; TOVE BURMAN, an individual; SONY MUSIC PUBLISHING LLC; WARNER CHAPPELL MUSIC INC.; KOBALT MUSIC PUB AMERICA INC.; BMG RIGHTS MANAGEMENT US LLC; CONCORD MUSIC GROUP, INC.; and DOES 1-10,

Defendants.

Plaintiffs Aidan Rodriguez, Adam Gokcebay, Audrey Armacost, and Michael Campanelli, through counsel, hereby pray to this Court for relief based on the following:

## JURISDICTION AND VENUE

1.    This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*.

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b), 1367(a).

3.    Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

4.    At all relevant times, Aidan Rodriguez, a Grammy-nominated producer and songwriter, resides in Los Angeles, California. Rodriguez regularly works with internationally renowned artists such as Lucky Daye and Khalid.

5.    At all relevant times, Adam Gokcebay, a songwriter and talent manager/A&R who has worked with multi-platinum producers, resides in Los Angeles, California.

6.    At all relevant times, Audrey Armacost, a singer and songwriter with millions of subscribers and hundreds of millions of views on YouTube alone, resides in

Los Angeles, California. Armacost has written and recorded chart-topping songs with artists such as Tate McRae.

7. At all relevant times, Michael Campanelli, a producer who has worked extensively with pop artists such as The Army, The Navy, resides in Los Angeles, California.

8. Rodriguez, Gokcebay, Armacost, and Campanelli are collectively referred to as "Plaintiffs."

9. Upon information and belief, at all relevant times, Defendant Hybe Co. Ltd. is a Korean corporation with a principal place of business located at 42, Hangang-Daero, Yongsan-gu, Seoul, 04389. Hybe Co. Ltd. has been and continues to be registered with the California Secretary of State since 2019 and maintains a registered agent for service of process in California. Hybe Co. Ltd. maintains an office and/or location in this judicial district.

10. Upon information and belief, Hybe Co. Ltd. owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Hybe Co. Ltd. is a publisher of the composition of *How Sweet*. Hybe Co. Ltd. has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

11. Upon information and belief, at all relevant times, Defendant Hybe Music Services, LLC is a limited liability company with principal places of business located at 2119 Colorado Avenue, Suite 200, Santa Monica, CA 90404; and/or 1221 16th Avenue South, Nashville, TN 37205.

12. Upon information and belief, Hybe Music Services, LLC owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Hybe Music Services, LLC is a publisher of the composition of *How Sweet*. Hybe Music Services, LLC has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or

publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

13. Upon information and belief, at all relevant times, Defendant Hybe America Inc. is a California corporation with a principal place of business located at 2100 Colorado Avenue, Santa Monica, CA 90404.

14. Upon information and belief, Hybe America Inc. owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Hybe America Inc. is a publisher of the composition of *How Sweet*. Hybe America Inc. has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

15. Upon information and belief, at all relevant times, Defendant ADOR Co., LTD. is a Korean limited corporation owned in whole or in part by Hybe Co. Ltd. ADOR does business in and with California and this judicial district, namely, at its and/or its affiliates' or owner's offices located at 2110 Colorado Avenue, Suite 200, Santa Monica, CA 90404.

16. Upon information and belief, ADOR Co., LTD. owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. ADOR is a publisher of the composition of *How Sweet*. ADOR has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

17. Upon information and belief, at all relevant times, Defendant Kin Min-ji p/k/a "Minji" is an individual residing (or who otherwise maintains a residence) in,

4

COMPLAINT

and/or doing business in and with, California and this judicial district. Minji has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

18.    Upon information and belief, Minji owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Minji co-authored *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district. Minji has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

19.    Upon information and belief, at all relevant times, Defendant Hanni Pham p/k/a "Hanni" is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. Hanni has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

20.    Upon information and belief, Hanni owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Hanni co-authored *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district. Hanni has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

21.    Upon information and belief, at all relevant times, Defendant Danielle June Marsh p/k/a "Danielle" is an individual residing (or who otherwise maintains a residence)

COMPLAINT

in, and/or doing business in and with, California and this judicial district. Danielle has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

22.    Upon information and belief, Danielle owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Danielle co-authored *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district. Danielle has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

23.    Upon information and belief, at all relevant times, Defendant Kang Hae-rin p/k/a "Haerin" is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. Haerin has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

24.    Upon information and belief, Haerin owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Haerin co-authored *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district. Haerin has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

25.    Upon information and belief, at all relevant times, Defendant Lee Hye-in p/k/a "Hyein" is an individual residing (or who otherwise maintains a residence) in,

COMPLAINT

and/or doing business in and with, California and this judicial district. Hyein has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

26. Upon information and belief, Hyein owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Hyein co-authored *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district. Hyein has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

27. Upon information and belief, Minji, Hanni, Danielle, Haerin, and Hyein are members of the musical group "New Jeans" and collectively referred to as "NJZ" or "New Jeans."

28. Upon information and belief, at all relevant times, Defendant UMG Recordings, Inc. is a Delaware corporation with a principal place of business located at 2220 Colorado Avenue, Santa Monica, CA 90404; and/or a registered agent for service of process located at 330 N Brand Blvd., Glendale, CA 91203.

29. Upon information and belief, UMG owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. UMG has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

30. Upon information and belief, at all relevant times, Defendant The Coca-Cola Company, d/b/a "Coke Studio," is a Delaware Corporation with a principal place of business of One Coca-Cola Plaza, N.W., Atlanta, GA 30313. Coke has been and

continues to be registered with the California Secretary of State since 1936 and maintains a registered agent for service of process in this judicial district at 330 N Brand Blvd., Glendale, CA 91203.

31. Upon information and belief, Coke Studio owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Coke has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

32. Upon information and belief, at all relevant times, Defendant YG PLUS Co. is a Korean corporation. YG PLUS has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

33. Upon information and belief, YG PLUS Co. owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. YG PLUS is a publisher of the composition of *How Sweet*. YG PLUS has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

34. Upon information and belief, at all relevant times, Defendant Beasts And Natives Co., Ltd. d/b/a "BANA Entertainment" is a Korean corporation. BANA has written agreements regarding ownership and exploitation of *How Sweet* with entities located in this judicial district, including Concord Music Group, Inc., Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

35. Upon information and belief, BANA owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. BANA is a publisher of the composition of *How*

*Sweet*, and individuals at BANA are credited as vocal directors of *How Sweet*. BANA has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

36.    Upon information and belief, at all relevant times, Defendant Oscar Scheller is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. Scheller has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

37.    Upon information and belief, Oscar Scheller owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Scheller co-wrote *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district, and is a credited author and composer of *How Sweet*. Scheller has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

38.    Upon information and belief, at all relevant times, Defendant Elvira Anderfjärd p/k/a "ELVIRA" is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. ELVIRA has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

39.    Upon information and belief, ELVIRA owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. ELVIRA co-wrote *How Sweet*, which was created at

COMPLAINT

least in part in California and/or this judicial district and was mixed and mastered in this judicial district, and is a credited author and composer of *How Sweet*. ELVIRA has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

40.    Upon information and belief, at all relevant times, Defendant Stella Rose Bennett p/k/a "BENEE" is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. Benee has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

41.    Upon information and belief, Benee owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Benee co-wrote *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district, and is a credited author and composer of *How Sweet*. Benee has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

42.    Upon information and belief, at all relevant times, Defendant Ho Hyung Lee p/k/a "250" is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. 250 has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc. 250 is a BANA producer and has collaborated with New Jeans on numerous songs.

COMPLAINT

43.     Upon information and belief, 250 owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. 250 produced *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district, and is a credited producer and co-writer of *How Sweet*. 250 has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

44.     Upon information and belief, at all relevant times, Defendant Sarah Aarons is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. Aarons has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Sony Music Publishing LLC, Hybe Co. Ltd., and/or Hybe Co. Ltd.'s affiliates/subsidiaries Hybe Music Services, LLC or Hybe America Inc.

45.     Upon information and belief, Sarah Aarons owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Aarons co-wrote *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district, and is a credited author and composer of *How Sweet*. Aarons has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

46.     Upon information and belief, at all relevant times, Defendant Tove Burman is an individual residing (or who otherwise maintains a residence) in, and/or doing business in and with, California and this judicial district. Burman has written agreements regarding the ownership and exploitation of *How Sweet* with entities located in this judicial district, including Hybe Co. Ltd. and/or its affiliates/subsidiaries Hybe Music Services, LLC and/or Hybe America Inc.

47. Upon information and belief, Burman owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Burman co-wrote *How Sweet*, which was created at least in part in California and/or this judicial district and was mixed and mastered in this judicial district, and is a credited author and composer of *How Sweet*. Burman has offered for sale or download, sold, reproduced, distributed, prepared derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *How Sweet*; and has earned revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

48. Upon information and belief, at all relevant times, Defendant Sony Music Publishing LLC is a Delaware corporation with a principal place of business located at 25 Madison Avenue, New York, New York 10010. Sony maintains offices and registered agents for service of process in California and this judicial district.

49. Upon information and belief, Sony owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Sony is a publisher of the composition of *How Sweet*. Sony has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

50. Upon information and belief, at all relevant times, Defendant Warner Chappell Music Inc. is a Delaware corporation with a principal place of business located at 777 South Santa Fe Ave., Los Angeles, CA 90021.

51. Upon information and belief, Warner owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Warner is a publisher of the composition of *How Sweet*. Warner has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed

revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

52.   Upon information and belief, at all relevant times, Defendant Kobalt Music Publishing America Inc. is a Delaware corporation with a principal place of business located at 2 Gansevoort Street, 6th Floor, New York, NY 10014. Kobalt maintains offices and registered agents for service of process in California and this judicial district.

53.   Upon information and belief, Kobalt owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Kobalt is a publisher of the composition of *How Sweet*. Kobalt has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

54.   Upon information and belief, at all relevant times, Defendant BMG Rights Management US LLC d/b/a BMG Gold Songs is a Delaware limited liability company with a principal place of business located at One Park Avenue, 18th Floor, New York, NY 10019 and maintains offices at 5670 Wilshire Blvd., Suite 1400, Los Angeles, CA 90036.

55.   Upon information and belief, BMG owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. BMG is a publisher of the composition of *How Sweet*. BMG has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

56.   Upon information and belief, at all relevant times, Defendant Concord Music Group, Inc. is a Delaware corporation with a principal place of business located at

COMPLAINT

10 Lea Avenue, Suite 300, Nashville, TN 37210. Concord maintains offices and/or registered agents for service of process in California and this judicial district.

57.     Upon information and belief, Concord owns and/or controls, in whole or in part, exclusive rights in *How Sweet*. Concord is a publisher of the composition of *How Sweet*. Concord has offered for sale or download, sold, reproduced, distributed, prepared derivative works, and/or publicly performed (or authorized or licensed any/all of the foregoing) the composition of *How Sweet*; and has earned, collected, and/or distributed revenues and profits generated in connection with the same since the release of *How Sweet*, including in this judicial district.

58.     Defendants Does 1-10 are other parties not yet identified who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiffs' copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual, or otherwise, of Defendants Does 1-10 are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when the same have been ascertained.

59.     Upon information and belief, at all relevant times, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants, and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment; and actively participated in, subsequently ratified, and/or adopted all of the acts or conduct alleged, with full knowledge of all violations of Plaintiffs' rights and the damages to Plaintiff proximately caused thereby.

## DEFENDANTS' INFRINGEMENT OF
## PLAINTIFFS' COPYRIGHTS IN *ONE OF A KIND*

### A. Plaintiffs create *One of a Kind*

60.     Plaintiffs are, collectively, in-demand and sought-after singers, songwriters, producers, and artists.

61.     Armacost is a songwriter for Pulse Music Group.

62.     On or about January 9, 2024, Pulse sent Armacost an instrumental track from New Jeans and asked Armacost to write a topline[1] for that instrumental track to be submitted to New Jeans for consideration. Pulse and New Jeans did not provide or require any particular creative contribution to or of Armacost with respect to the topline.

63.     The pre-existing instrumental track is in 4/4 meter[2] and the key of B flat minor.[3]

64.     On or about January 10, 2024, Plaintiffs jointly authored the original *One of a Kind* musical composition and sound recording (embodying that musical composition) registered with the Copyright Office. Plaintiffs are joint owners of *One of a Kind*.

65.     *One of a Kind* contains a verse one topline[4] that, among other things, includes an approximately eight-bar, 31-note melodic sequence consisting of four series:

---

[1] A "topline" is the vocal melody, harmony, and lyrics written "on top" of a pre-existing instrumental track.

[2] "Meter" defines the number of beats per bar. Meter determines the basic pulse and rhythm of a piece of music. In 4/4 meter, there are four beats in each bar of music. A quarter note occupies one beat, such that there are four quarter notes in one bar (i.e., beats 1, 2, 3, and 4). An eighth note occupies half a beat, such that there are eight eighth notes in one bar (i.e., beats 1, 1&, 2, 2&, 3, 3&, 4, and 4&). "&" identifies the upbeat, otherwise known as the "and," of "one." "Key" refers to the tonal center of a musical composition, and to the scale or series of pitches that create the melodic and harmonic material of the music.

[3] "Key" refers to the tonal center of a musical composition, and to the scale or series of pitches that create the melodic and harmonic material of the music.

[4] The "topline" is a term used in popular music for the vocal melodies, harmonies, and lyrics that exist "on top" of an underlying instrumental track.

COMPLAINT

a. The **first series** features four eighth notes metrically placed [5] (or "played") on beats 1, 1&, 2, and 2&, followed by a quarter note played on beat 3, consisting of scale degrees 5-5-3-3-1.[6] This series is then repeated.

b. The **second series** features four eighth notes followed by a quarter note consisting of scale degrees 4-4-2-2-7. This series is then repeated.

c. The **third series** features four eighth notes followed by a quarter note consisting of scale degrees 4-4-flat 2-flat 2-7.[7] This series is then repeated. The "flat 2" in this series is a unique and uncommon choice because it is "outside the key," i.e., it is not native to the key of B flat.

d. The **fourth series** begins with an eighth note consisting of scale degree 3.

66.     This combination of compositional elements prominently featured in *One of a Kind*, repeated twice and occurring at approximately time markers 0:30-0:43 and 1:39-1:52 in *One of a Kind*, is distinctive and original to Plaintiffs.

**B. Defendants' access to *One of a Kind***

67.     On or around January 10, 2024, Armacost sent *One of a Kind* to Pulse.

68.     Upon information and belief, between that time and approximately January 12, 2024, Pulse distributed *One of a Kind* to BANA, including Hanna Cho (A&R at BANA) and Keyon Kim (CEO of BANA), for New Jeans' consideration.

---

[5] "Metric placement" describes the location within a bar of a particular pitch. For example, two pitches with the same metric placement would occur on the same beat—such as beat 1, 2, 3, or 4—or subdivision of that beat.

[6] A "scale degree" describes the position within a musical scale of a particular tone. For example, in a traditional seven-note C major scale (comprising C, D, E, F, G, A, and B), the first tone, C, is scale degree 1; the second tone, D, is scale degree 2; the third tone, E, is scale degree 3; etc.

[7] The term "flat 2" refers to scale degree 2 lowered in pitch by one half-step. For example, in a traditional seven-note C major scale (comprising C, D, E, F, G, A, and B), the second tone, D, is scale degree 2, and "flat 2" would refer to "D flat."

69.     Upon information and belief, on or around January 24, 2024, BANA confirmed its', Cho's, Kim's, and New Jeans' receipt and consideration of *One of a Kind*. BANA stated that while they listened to and liked *One of a Kind*'s topline, it would not be selected or included as the final topline for the to-be-released song using the pre-existing instrumental track.

70.     Upon information and belief, BANA reached out to numerous songwriters and artists and asked them to submit musical material for BANA and New Jeans' consideration. Each of these submissions were sent to and received by Cho and/or Kim.

71.     Upon information and belief, at all relevant times, Kim and/or Cho have been heavily involved in the songwriting and recording process for each song by New Jeans. For example, the former CEO of ADOR, who worked with BANA and Kim on songwriting and recording, has stated that "[Kim] is New Jeans" and "produced all of NewJeans' songs," and that "In the process of collecting songs, completing them, and refining the details, I exchange various opinions with [Kim], not the composers."

72.     She has also stated that, with respect to working with Kim on songwriting and recording, "I am not a composer or lyricist, so I am a producer who has nothing to do with copyright. If we dare to interpret this upside down, it can also be seen as meaning that we can work much more without hesitation in the composition and selection of music." Specifically, she stated that because "the proportion of planners who coordinate this entire process has increased," "it is not a song created by one person. If you experience various demo samples of melodies placed on the same beat by different top liners, you will probably be able to touch it."

73.     Upon information and belief, the creation of *How Sweet* thus involved listening to the various submitted tracks, including *One of a Kind*, and taking particular sections or portions from those tracks, including *One of a Kind*'s verse one topline, and assembling them into a final work. Indeed, Benee has stated that *How Sweet* is "a mix of three people's songs merged into one."

COMPLAINT

74. Accordingly, upon information and belief, after admittedly receiving and listening to *One of a Kind*, BANA, Cho, and/or Kim incorporated *One of a Kind*'s verse one topline in creating *How Sweet* and/or shared *One of a Kind*'s verse one topline melody with Aarons directly or indirectly through Sony.

75. By nature of, and/or in conjunction with, BANA, Cho, Kim, and/or Aarons incorporating *One of a Kind*'s verse one topline in creating *How Sweet*, Danielle, Elvira, Scheller, Benee, Burman, 250, Minji, Hanni, Danielle, Haerin, and Hyein also had access to *One of a Kind* in creating *How Sweet*.

76. Plaintiffs were never presented with a license or agreement permitting Defendants' use of *One of a Kind*'s topline and/or original elements therefrom, nor did Plaintiffs ever authorize or consent to Defendants' use of the same.

**C. *How Sweet*'s Release**

77. On or around May 24, 2024, *How Sweet* was released as a single and as part of New Jeans' album *How Sweet*. Hanna Cho and Keyon Kim, A&R's at BANA who received and listened to *One of a Kind*, are credited as vocal directors of *How Sweet*.

78. Upon information and belief, Coke, in partnership with UMG and in collaboration with Minji, Hanni, Danielle, Haerin, and Hyein, and/or Hybe Co., Ltd, Hybe Music Services, LLC, Hybe America Inc., ADOR Co. Ltd., BANA, and/or YG PLUS, solicited the creation of *How Sweet* to be prominently featured in Coke advertising campaigns targeting this judicial district, among others, that coincided with the release of *How Sweet*.

79. *How Sweet* is in 4/4 meter and the key of B flat minor.

80. *How Sweet* contains a verse one topline that, among other things, includes an approximately eight-bar, 31-note melodic sequence consisting of four series:

   a. The **first series** features four eighth notes played on beats 1, 1&, 2, and 2&, followed by a quarter note played on beat 3, consisting of scale degrees 5-5-3-3-1. This series is then repeated.

b. The **second series** features four eighth notes followed by a quarter note consisting of scale degrees 4-4-2-2-7. This series is then repeated.

c. The **third series** features four eighth notes followed by a quarter note consisting of scale degrees 4-4-flat 2-flat 2-7. This series is then repeated. The "flat 2" in this series is outside the key of B flat.

d. The **fourth series** begins with an eighth note consisting of scale degree 3.

81. This combination of compositional elements is repeated twice (occurring at approximately time markers 0:07-0:19 and 0:22-0:30 of *How Sweet*) and prominently featured in *How Sweet*.

82. *How Sweet* was released to great commercial success. Physical copies, digital sales and downloads, streaming, and/or public performances of *How Sweet* were, and continue to be, available.

83. Defendants, and each of them, exploited the composition (and/or sound recording embodying the composition) of *How Sweet* as set forth above from the date of its release through the present, and including by offering for sale or download, selling, reproducing, distributing, preparing derivative works of, and/or publicly performing (or authorizing or licensing any/all of the foregoing) *How Sweet*; and earning, collecting, and/or distributing revenues and profits generated in connection with the same.

**D. *How Sweet*'s substantial, and indeed striking, similarity to *One of a Kind***

84. *One of a Kind* and *How Sweet* contain quantitatively and qualitatively similar material in their respective verse one toplines, namely, a combination of compositional elements that is original and distinctive to *One of a Kind*.

85. Both works are in 4/4 meter and the key of B flat minor. And both works contain a topline that includes an approximately eight-bar, 31-note melodic sequence consisting of four series:

a. In both works, the **first series** features four eighth notes played on beats 1, 1&, 2, and 2&, followed by a quarter note played on beat 3, consisting of scale degrees 5-5-3-3-1. This series is then repeated.

b. In both works, the **second series** features four eighth notes followed by a quarter note consisting of scale degrees 4-4-2-2-7. This series is then repeated.

c. In both works, the **third series** features four eighth notes followed by a quarter note consisting of scale degrees 4-4-flat 2-flat 2-7. This series is then repeated. The "flat 2" in this series is outside the key of B flat.

d. The **fourth series** begins with an eighth note consisting of scale degree 3.

86. These similarities are on full display in the comparison below[8]:



---

[8] Red highlights indicate identical scale degrees and rhythms, and the blue arrows show corresponding scale degrees that are not fully aligned rhythmically in the second and third series.

COMPLAINT

**Detail – First Series**



**Detail – Second Series**

Detail – Third Series

87.    There are also structural similarities between *One of a Kind* and *How Sweet* that are probative of copying:

|  | *One of a Kind* | *How Sweet* |
|---|---|---|
| **Instrumental Intro** | 8 bars | 4 bars |
| **Verse 1** | 16 bars<br>Topline at issue: Bars 9-16 | 16 bars<br>Topline at issue: Bars 1-8 and 9-16<br>(Topline repeated 2x) |
| **Rap Pre-Chorus** | 4 bars<br>(3-bar rap, drops beat 1 of bar 4, chorus starts on beat 2&) | 4 bars<br>(3-bar rap, drops beat 1 of bar 4, chorus starts on beat 1&) |
| **Chorus** | 16 bars | 16 bars |

88.    And at least one lyrical similarity between *One of a Kind* and *How Sweet* is probative of copying, namely, the first repetition of the third series of the verse one

topline at issue in both *One of a Kind* and *How Sweet* share the same rhyme, syllable, and sound scheme.

89.   Thus, following the creation of *One of a Kind* and gaining access to the same, Defendants, and each of them, included elements in *How Sweet*'s musical composition (and sound recording embodying that composition) that are strikingly and/or substantially similar, and indeed virtually identical, to original elements from *One of a Kind*, without a license from or compensation to Plaintiffs.

90.   Before filing this lawsuit, Plaintiffs contacted numerous Defendants in an attempt to resolve this dispute. Those Defendants either did not respond or were unable to reach a resolution with Plaintiffs, necessitating the filing of this action.

## FIRST CLAIM FOR RELIEF

### (For Copyright Infringement—Against all Defendants, and Each)

91.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

92.   Plaintiffs jointly authored and own the copyrights in the original *One of a Kind* topline, which is registered with the U.S. Copyright Office.

93.   Upon information and belief, Defendants, and each of them, had access to *One of a Kind* (1) through a chain of events connecting Plaintiffs' work and the Defendants', and each of their, opportunity to hear or copy that work, and/or (2) because the asserted similarities between *One of a Kind* and *How Sweet* are so striking that it is highly likely the works were not created independent of one another.

94.   Upon information and belief, Defendants, and each of them, reproduced, distributed, created derivative works of, and/or publicly performed (or authorized or licensed any/all of the foregoing) *One of a Kind* in creating, offering for sale or download, selling, reproducing, distributing, creating derivative works of, and/or publicly performing (or authorizing or licensing any/all of the foregoing) *How Sweet*, all without authorization from or compensation to Plaintiffs.

23

COMPLAINT

95.     Due to Defendants', and each of their, acts of copyright infringement, Plaintiffs have suffered damages in an amount to be established at trial.

96.     Due to Defendants', and each of their, acts of copyright infringement, Defendants, and each of them, have obtained profits they would not have realized but for their infringement. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement in an amount to be established at trial.

97.     Upon information and belief, Defendants', and each of their, conduct as alleged herein was done with actual or construction knowledge of, and/or reckless disregard or willful blindness for, Plaintiffs' rights in *One of a Kind*, such that Defendants' infringements were, and continue to be, willful.

## SECOND CLAIM FOR RELIEF

**(For Vicarious Copyright Infringement—Against all Defendants, and Each)**

98.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

99.     Upon information and belief, the third parties (including other Defendants) to whom Defendants, and each of them, distributed and/or authorized the distribution of *How Sweet* have further reproduced, distributed, adapted, and/or publicly performed *How Sweet*, and continue to do so, without Plaintiffs' authorization—e.g., the third-party digital music streaming and subscription services streaming *How Sweet* (e.g., Spotify, YouTube, Apple Music, Amazon Music, Tidal, etc.) directly infringe Plaintiffs' public performance right in *One of a Kind* by doing so.

100.    Upon information and belief, Defendants, and each of them, have the right and ability to supervise or control those third parties' directly infringing activities. Defendants, and each of them, distributed and/or authorized the distribution of *How Sweet* to third parties (including other Defendants) pursuant to licensing or other agreements with those third parties that grant Defendants, and each of them, the right and ability to supervise or control those third parties' further reproduction, distribution,

COMPLAINT

adaptation, and/or public performance of *How Sweet*—e.g., under those agreements, upon demand by any Defendant, and/or their representatives, the third-party digital music streaming and subscription services must cease and desist from streaming, or otherwise remove, disable, or limit users' access to, *How Sweet*.

101. Upon information and belief, Defendants, and each of them, directly and substantially financially benefit from those third parties (including other Defendants) further reproducing, distributing, adapting, and/or publicly performing *How Sweet* pursuant to the licensing or other agreements between them—e.g., under their agreements with the third-party digital music streaming and subscription services, Defendants, and each of them, earn a share of the revenue produced by, and thus profits from, each and every stream of *How Sweet* by and/or on those third-party digital music streaming and subscription services.

102. Upon information and belief, Defendants, and each of them, have nevertheless failed to exercise their right and ability to supervise or control those third parties' directly infringing activities, namely, to stop or limit the further reproduction, distribution, adaptation, and/or public performance of *How Sweet* by those third parties (including other Defendants)—e.g., each Defendant has failed to demand that the third-party digital music streaming and subscription services cease and desist from streaming, or otherwise remove, disable, or limit users' access to, *How Sweet*, and instead has continued to directly and substantially financially benefit from those third-party digital music streaming and subscription services streaming *How Sweet* and thus directly infringing Plaintiffs' public performance right in *One of a Kind*.

103. This renders Defendants, and each of them, vicariously liable for the direct infringement of those third parties (including other Defendants).

104. Due to Defendants', and each of their, acts of vicarious copyright infringement, Plaintiffs have suffered damages in an amount to be established at trial.

105. Due to Defendants', and each of their, acts of vicarious copyright infringement, Defendants, and each of them, have obtained profits they would not have

COMPLAINT

realized but for their vicarious infringement of Plaintiffs' copyright in *One of a Kind*. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement in an amount to be established at trial.

106. Upon information and belief, Defendants, and each of their, conduct as alleged herein was done with actual or constructive knowledge of, and/or reckless disregard or willful blindness for, Plaintiffs' rights in *One of a Kind*, such that Defendants' vicarious infringements were, and continue to be, willful.

## THIRD CLAIM FOR RELIEF

### (For Accounting—Against all Defendants, and Each)

107. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

108. In the alternative, Plaintiffs allege that they are co-writers of *How Sweet* with respect to the composition of *How Sweet*'s verse one topline. Such status entitles Plaintiffs to a share of the monies generated from the exploitation of *How Sweet*.

109. Plaintiffs and Defendants each jointly contributed separate, distinct, and independently copyrightable material to *How Sweet*. Plaintiffs and Defendants each possessed independent creative control over their respective contributions.

110. Plaintiffs and Defendants each manifested an intent to be co-writers of *How Sweet* and worked together jointly to create *How Sweet*. Plaintiffs and Defendants intended that their separate contributions be merged into inseparable or interdependent parts of a unitary composition.

111. Plaintiffs contributed significantly to *How Sweet*, including composing the above-referenced verse one topline.

112. Plaintiffs, as joint authors and co-owners of the composition of *How Sweet*, are entitled to their pro rata share of the profits that Defendants have each gained from the exploitation of *How Sweet*.

113.   By commercially exploiting *How Sweet* without accounting to Plaintiffs for profits, Defendants, and each of them, have wrongfully deprived Plaintiffs of their rightful share of income therefrom.

114.   Defendants are in sole control of the books and records needed to ascertain the amounts due to Plaintiffs pursuant to their special relationship as joint authors and co-owners of the composition of *How Sweet*. Plaintiffs have no means by which they can acquire the information necessary to calculate what is owed to them by Defendants, and each of them.

115.   Plaintiffs are entitled to an Order of this Court directing Defendants, and each of them, to render a complete and honest accounting of all revenues derived from the exploitation of *How Sweet* and all sums due to Plaintiffs and to pay Plaintiffs the sums shown due by such accounting.

116.   Joint copyright owners have a duty to account and pay to their co-owners their portions of any profits realized in connection with the jointly owned copyrights; yet, upon information and belief, Defendants, and each of them, have failed to account or make payments as required.

## **PRAYER FOR RELIEF**

### **(Against All Defendants, and Each)**

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, as follows:

a. A declaration that Defendants have willfully infringed Plaintiffs' copyrights in *One of a Kind*;

b. An injunction permanently restraining and enjoining Defendants, each of them, and anyone working for, with, or in concert with Defendants, from further infringing Plaintiffs' copyrights in *One of a Kind*, or alternatively that Plaintiffs be awarded future revenues and profits earned in connection with the continued exploitation of *How Sweet* in an amount attributable to use of *One of a Kind* in *How Sweet*, the exact sum to be proven at the time of trial;

c. Awarding all Defendants' (and each of their) revenues and profits, plus all Plaintiffs' losses, directly and indirectly attributable to Defendants' (and each of their) infringements of Plaintiffs' copyrights in *One of a Kind* as alleged herein, the exact sum to be proven at the time of trial;

d. Awarding Plaintiffs pre- and post-judgment interest as allowed by law;

e. Awarding Plaintiffs the costs of this action; and

f. Awarding Plaintiffs such further and other relief as the Court deems proper.

Plaintiffs demand a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully submitted,

Dated: May 7, 2026

By: /s/ *Trevor W. Barrett*
Trevor W. Barrett, Esq.
Benjamin F. Tookey, Esq.
Nelson A. Campbell, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiff*

COMPLAINT